MATTER OF WONG

In Bond Cancellation Proceedings

A-14746227

*Decided by Regional Commissioner July 22, 1969*

A maintenance of status and departure bond posted in behalf of a nonimmigrant visitor is breached when the alien violated the conditions of his admission by accepting unauthorized employment within the period of his authorized admission and prior to submission of his application for adjustment of status to that of permanent resident (which occurred after the last date set by the Service for his departure), and the effective date of his eventual adjustment of status was subsequent to his violation of nonimmigrant status.

ON BEHALF OF OBLIGOR: Samuel Tapper, Esquire
49 Pearl Street
Hartford, Connecticut 06103

This matter is before the Regional Commissioner on appeal from the decision of the District Director of February 7, 1969 concluding that the bond had been breached and the U.S. Treasury Bond posted as security had been forfeited. The District Director found that the alien was admitted to the United States on August 24, 1966 as a visitor for pleasure until November 23, 1966, and that the alien failed to comply with the terms of admission in that the alien was engaged in unauthorized employment at the House of Moy Restaurant, Houston, Texas, from November 4, 1966 to January 1967.

The maintenance of status and departure bond in the sum of $1,000 was signed by the obligor and accepted by the District Director of this Service in Boston on July 12, 1966. This action was pursuant to the request of the American Consul in Caracas, Venezuela of May 18, 1966 for a bond in support of the alien's application for a nonimmigrant visa. The alien was admitted at Miami, Florida on August 24, 1966 as a temporary visitor for pleasure until November 23, 1966.

The alien was apprehended by investigators of this Service at

the House of Moy Restaurant, Houston, Texas, on December 1, 1966. The report of apprehension shows the alien was employed as a cook when found; that he had been helping at the restaurant since its opening on November 4, 1966; and that although the alien purportedly had not been receiving wages, he had taken his meals at the restaurant and had slept on the premises. On December 1, 1966, the alien was notified he would be required to depart from the United States on or before December 16, 1966. On December 7, 1966, the departure time was extended to January 15, 1967. No further extension of the time for his required departure was requested nor granted.

On May 4, 1967, the alien filed an application for permanent resident status under section 245 of the Immigration and Nationality Act, accompanied by a sixth preference visa petition executed in his behalf by South Seas Restaurant, Inc., of West Hartford, Connecticut. The alien stated in his application that he was employed as a cook by the House of Moy, Houston, Texas, from October 1966 until January 1967, and that he had been employed by South Seas restaurant since January 1967. The statements in his application were reviewed and affirmed by the alien under oath on August 25, 1967.

On oral argument, counsel stated the request from the American Consul was for a bond to insure departure from the United States; that the alien had no notice or warning that he was required to maintain his visitor's status; and that the alien's disclosure at the time of apprehension, that a sixth preference visa petition had been filed for him as well as the employment statement in the adjustment of status application, indicated the alien was not aware that he must maintain "pure" visitor's status. Counsel cited *Matter of Continental Casualty Co.*, 12 I. & N. Dec. 795, and urged the decision of the District Director be revoked and the collateral security returned to the obligor.

The precedent decision cited by counsel has no application here. It involved an alien who was in lawful nonimmigrant status when the first private bill was introduced in her behalf; who was within her authorized departure time when the second private bill was filed; and whose status was ultimately adjusted on the basis of a section 245 application *filed within an authorized departure time.* No violation of nonimmigrant status was present or considered therein.

The proviso added by the Act of October 3, 1965 to section 1(g), of the Immigration and Nationality Act reads:

. . PROVIDED FURTHER, That a visa may be issued to an alien de-

384

fined in section 101(a) (15) (B) or (F), if such alien is otherwise entitled to receive a visa, upon receipt of a notice by the consular officer from the Attorney General of the giving of a bond with sufficient surety in such sum and containing such conditions as the consular officer shall prescribe, to insure that at the expiration of the time for which such alien has been admitted by the Attorney General, as provided in section 214(a), or upon failure to maintain the status under which he was admitted, or to maintain any status subsequently acquired under section 248 of the Act, such alien will depart from the United States.

The instant bond on Form I–352, the Immigration Bond Form prescribed pursuant to the authority of the Attorney General under section 103(a) of the Immigration and Nationality Act and Service Regulations (8 CFR 299.1), contained the following conditions:

If said alien is admitted to the United States for a temporary period as a nonimmigrant, and *if said alien shall comply with all the conditions of each specific nonimmigrant status which he is accorded while classified in such status*, and actually depart from the United States without expense thereto on or before the date to which admitted or such subsequent date as may be authorized in extension of his lawful temporary stay beyond such date, without notice to the obligor, then this obligation shall be void; otherwise it shall become due and payable immediately in the sum of one thousand dollars ($1,000.00) for each alien as to whom there shall have been a failure to comply with any of the foregoing conditions, provided that in no event shall the liability of the obligor exceed the total sum of one thousand dollars ($1,000.00); and provided further, *that no adjustment of the immigration status of said alien shall be construed to impair or diminish this obligation.* (Emphasis supplied.)

The surety cannot question his responsibility under the bond, if it is established that a violation occurred. *United States v. Olson,* 42 F.2d 1070 (1931).

The Service regulations regarding a violation of a bond are 8 CFR 103.6(c) (2) which reads:

When the status of a nonimmigrant who has violated the conditions of his admission has been adjusted as a result of administrative or legislative action to that of a permanent resident *retroactively to a date prior to the violation,* any outstanding maintenance of status and departure bond shall be cancelled. If an application for adjustment of status is made by a nonimmigrant *while he is in lawful temporary status,* the bond shall be cancelled if his status is adjusted to that of a lawful permanent resident or if he voluntarily departs within any period granted to him. As used in this subparagraph, the term "lawful temporary status" means that there must not have been a violation of any of the conditions of the alien's nonimmigrant classification *by acceptance of unauthorized employment* or otherwise *during the time he has been accorded such classification,* and that from the date of admission to the date of departure or adjustment of status he must have had uninterrupted Service approval of his presence in the United States in the form of regular extensions of stay or dates set by which departure is to

occur, or a combination of both. An alien admitted as a nonimmigrant shall not be regarded as having violated his nonimmigrant status by engaging in employment subsequent to his valid filing of an application for adjustment of status under section 245 of the Act and Part 245 of this chapter ........ (Emphasis supplied.)

and 8 CFR 103.6(e) which provides that:

...... A bond is breached when there has been a substantial violation of the stipulated conditions. A final determination that a bond has been breached creates a claim in favor of the United States which may not be released or discharged by a Service officer.......

Maintenance of status and departure bonds are violated by failure to depart from the United States during the allotted period or by violation of the terms of entry. An alien admitted as a visitor or pleasure who obtains employment and goes to work during the period of admission has failed to comply with the conditions of his nonimmigrant status, thereby breaching the bond; and liquidated damages are properly assessable notwithstanding a contention that no damage has been suffered. *Earle* v. *United States*, A.N.Y. 1958, 254 F.2d 384, certiorari denied 79 S. Ct. 35, 358 U.S. 822.

The record before us establishes that the alien violated the conditions of his admission by working in the United States without authority to do so within the period of his admission. He did not depart from the United States. He did not apply for adjustment of status to that of a permanent resident until approximately six months after the violation of nonimmigrant status, and nearly four months after the last date set by this Service for his departure from the United States. The event adjustment of his status to that of a permanent resident was not effective until more than eighteen months after his violation of status. Since there has been no performance according to the terms of the bond, substantial. The liability which has arisen on the part of the obligor cannot be waived. *United States* v. *Rosenfeld*, 109 F.2d 908. The District Director properly held that the bond had been breached and security forfeited.

*It is ordered* that the decision of the District Director declaring bond breached be and hereby is affirmed.