## MATTER OF NGUYEN

### In Bond Cancellation Proceedings

#### A-20040417

*Decided by Regional Commissioner January 28, 1975*

Under 8 CFR 103.6(b)(2), a maintenance of status and departure bond will be canceled if the alien files an application for permanent residence while still in lawful nonimmigrant status, and that application is approved. However, that will not be the case where the permanent residence application is filed after the period of authorized admission as a nonimmigrant has expired. In this case applicant filed an application for permanent residence 27 days after her period of authorized admission as a nonimmigrant had terminated. These 27 days of presence in the United States without Service authorization constituted a substantial violation under the terms of the bond and the decision by the district director to declare it breached, was proper.

ON BEHALF OF OBLIGOR: Allen R. Jackson, Esquire
580 Washington Street
San Francisco, California 94111

This is an appeal from the district director's notice of March 11, 1974, informing the obligor that the conditions of the $2,500 bond posted by him on December 17, 1971 had been violated on January 26, 1973, when the alien failed to depart the United States within the period she had been authorized to remain. In his notice of breach, the district director stated:

> The alien was admitted to the United States as a temporary visitor at Honolulu, Hawaii, on January 27, 1972 to July 6, 1972. She was then granted an extension of stay to January 5, 1973 at San Francisco, California. She was then denied a further extension and was accorded to January 25, 1973 in which to voluntarily depart the United States. The subject failed to depart, and on February 22, 1973 filed Application for Status as Permanent Resident, Form I-485, as a nonpreference alien.
>
> The alien violated her status, and thus breached the bond, by remaining in the United States without permission from this Service after January 25, 1973.

The facts are not in dispute. The record substantiates that there was a lapse of 27 days between the expiration of the alien's authorized temporary stay and the date on which she made application for adjustment of status pursuant to Section 245 of the Immigration and Nationality Act. The bond was posted in her behalf on December 17, 1971, at the request of the United States Consular Officer in Saigon, Vietnam, with the conditions of this bond in part as follows:

176

In consideration of the granting of the application of the above alien for permission to enter or remain temporarily in the United States as a nonimmigrant under section 101(a)(15) of the Immigration and Nationality Act, provided there is furnished a suitable bond, the obligor hereby furnishes such bond with the following conditions: If said alien is admitted to the United States for a temporary period as a nonimmigrant, or is granted an extension of temporary admission, or is granted a change in nonimmigrant classification, and if said alien shall comply with all the conditions of each specific nonimmigrant status which he is accorded while classified in such status, including the condition that unauthorized employment shall not be accepted, and actually depart from the United States without expense thereto on or before date to which admitted or extended or such subsequent date as may be authorized, in extension of his lawful temporary stay beyond such date, without notice to the obligor, then this obligation shall be void; otherwise it shall become due and payable immediately in the sum of Two Thousand Five Hundred — dollars ($2,500.00) for each alien as to whom there have been a failure to comply with any of the foregoing conditions, provided that in no event shall the liability of the obligor exceed the total sum of Two Thousand Five Hundred — dollars ($2,500.00); and provided further, that no adjustment of the immigration status of said alien shall be construed to impair or diminish this obligation.

On appeal, counsel contends that the period the alien was not in lawful temporary status, from January 25, 1973 until February 22, 1973, does not constitute a "substantial violation" of the terms of the bond within the meaning of 8 CFR 103.6(e). He further contends that the alien has substantially complied with the terms of the bond and that the bond should be canceled.

Counsel quotes liberally from 8 CFR 103.6. The dispute appears to be in the interpretation of "substantial performance" and "substantial violation". 8 CFR 103.6(c)(3) provides that an obligor shall be released from liability where there has been "substantial performance" of all conditions imposed by the terms of the bond. 8 CFR 103.6(e) provides that a bond is breached when there has been a "substantial violation of the stipulated conditions (of the bond)".

The rule of strict performance is relaxed only on substantial performance which is of benefit to the government.

Performance as a condition precedent to cancelation of a maintenance of status and departure bond must be strict performance in accordance with the terms and conditions thereto. However, this rule continues to be relaxed in delivery bonds where there has been a substantial performance which is of benefit to the government, i.e.: where the alien has departed the United States at no expense to the government.

Substantial performance exists where there has been no willful departure from the terms or conditions of the bond, where the conditions have been honestly and faithfully complied with and the only variance from their strict and literal performance consists of technical or unimportant occurrences. Substantial violations would be those acts which would constitute a willful departure from the terms or conditions of the bond or the failure to comply or adhere to the essential elements of those terms or conditions.

177

Under the conditions of the instant bond, the alien undertook the obligation to depart from the United States on or before a certain date without expense to the government. One of the responsibilities of the obligor was to see that she did. It was his obligation to keep apprised of the alien's whereabouts and his failure to do so does not relieve him of his responsibilities.

Counsel quotes from *Ahmed v. United States*, 480 F.2d 531 (C.A. 2, 1973), where the court held that:

... where condition of maintenance of status and departure bond plaintiff was required to post for person admitted as a nonimmigrant student was that such student would not accept employment without prior approval of Immigration Service and such student married an American citizen who filed on his behalf a petition to have him classified as an immediate relative of a United States citizen and such student went to work upon the filing of petition but before its approval and without prior permission, a material condition of bond was violated authorizing forfeiture thereof.

Counsel also cites, as does *Ahmed* (supra):

*Earle v. United States*, 254 F.2d 384 (C.A. 2), cert. denied, 358 U.S. 822, 79 S. Ct. 35, 3 L.Ed.2d 63 (1958); *Watzek v. United States*, 134 F. Supp. 605 (S.D.N.Y. 1955); *Kavounas v. United States*, 89 F. Supp. 689, 116 Ct. Cl. 406 (1950). In each of these cases the Bond was forfeited because the alien accepted unauthorized employment.

Counsel contends that these citations establish that maintenance of status and departure bonds are breached only on the alien accepting unauthorized employment. Such is not the case. Rather, they establish the strict construction placed on maintenance of status and departure bonds. Like any civil bond, an immigration bond is to be strictly construed. *Crane v. Buckley*, 203 U.S. 441, 27 S. Ct. 56, 51 L.Ed. 260.

Counsel cites the *Matter of Wong*, 13 I. & N. Dec. 383, stating the bond had not been breached. This is in error. In *Wong*, the bond was breached for the same reasons as the cases cited above.

In his brief, counsel arrives at the conclusion that a substantial violation occurs in maintenance of status and departure bonds only when an alien accepts unauthorized employment in the United States or remains beyond his authorized stay for a "lengthy" period of time. Counsel purposely evades defining what would constitute a "lengthy" period of time and states that a lapse of 27 days clearly falls short of that standard. After a diligent search of the cited cases, the applicable law and regulations, I am unable to identify such a standard.

The regulations contained in 8 CFR 103.6(b)(2) appear clear and unequivocal:

When the status of a nonimmigrant who has violated the conditions of his admission has been adjusted as a result of administrative or legislative action to that of a permanent resident *retroactively to a date prior to the violation*, any outstanding maintenance of status and departure bond shall be canceled. If an application for adjustment of status is made by a nonimmigrant while he is *in lawful temporary status*, the bond shall be

178

canceled if his status is adjusted to that of a lawful permanent resident or if he voluntarily departs within any period granted to him. As used in this subparagraph, the term "lawful temporary status" means that there must not have been a violation of *any* of the conditions of the alien's nonimmigrant classification by acceptance of unauthorized employment *or otherwise* during the time he has been accorded such classification, and that from the date of admission to the date of departure or adjustment of status he must have had *uninterrupted* Service approval of his presence in the United States in the form of regular extensions of stay or dates set by which departure is to occur, or a combination of both. (Underscoring supplied.)

Maintenance of status and departure bonds are breached only when the terms of admission have been violated or if the alien overstays the period for which he has been authorized to remain in the United States. To determine that failure to timely depart the United States or remain in the United States without authorization is a technical violation would in effect defeat the purpose of the bond and the regulations. The fact that the Service exercises discretion in excusing an "overstay" in other areas in no way alters the stipulations present in a maintenance of status and departure bond. There being only the two aforementioned ways to breach a bond, it would be incredible to diminish one to the extent it would no longer have meaning.

By the terms of the bond in question the alien was required to comply with two specific conditions: that he depart from the United States on or before the date to which admitted or the date to which his stay was extended and that he accept no employment while in the United States. Upon failure of the alien to comply with either or both of these conditions, the bond became due and payable immediately. *Matter of the Stuyvesant Insurance Company*, 13 I. & N. Dec. 555.

Whether the lapse is 27 minutes, 27 days, or 27 months, the fact is the obligor has failed to comply or adhere to an essential element of the conditions of the bond, therefore, a substantial violation. The alien simply failed to depart within the time she was authorized to remain. There was a period of 27 days in which she did not have uninterrupted Service approval of her presence in the United States. The surety cannot question his responsibility under the bond, if it is established that a violation occurred. *United States v. Olsen*, 42 F.2d 1070 (1931). The liability which has arisen on the part of the obligor cannot be waived. *United States v. Rosenfeld*, 109 F.2d 908.

In view of the foregoing, it has been determined there has been a substantial violation of the terms and conditions of the bond and the action of the district director in declaring the bond breached as proper. The appeal will be dismissed.

ORDER: IT IS ORDERED that the appeal be dismissed.

179