MATTER OF ALLIED FIDELITY INSURANCE COMPANY

In Bond Breach Proceedings

A-23046442

*Decided by Commissioner March 13, 1984*

(1) Petition by an alien for a writ of habeas corpus does not relieve an obligor of his responsibility to surrender the alien on demand pursuant to the terms of a delivery bond where the court has in no way relieved the obligor of this responsibility.

(2) Failure of the obligor to surrender the alien as required is not a mere technical or unimportant occurrence because sometime during the day on which surrender was demanded the alien filed a petition for a writ of habeas corpus; the alien's petition for a writ of habeas corpus is not therefore properly advanced as probative of substantial compliance with the terms of the delivery bond.

ON BEHALF OF OBLIGOR:   Raul Daza, Esquire
9100 Wilshire Boulevard
Suite 614
Beverly Hills, California 90212

This matter comes before the Commissioner on appeal from the decision of the district director who determined that the conditions of the $5,000 bond posted by the obligor were violated when the alien was not surrendered on January 25, 1983, as demanded. Consequently, the bond was breached and the obligor so notified on February 1, 1983.

The alien, a native and citizen of the Philippines, last entered the United States on July 17, 1978. At the time of his last entry, he was admitted as a nonimmigrant visitor, authorized to remain until October 15, 1978. He did not depart as required.

The alien was apprehended on November 7, 1979. An Order to Show Cause, Notice of Hearing, and Warrant of Arrest of Alien (Form I-221S) was served and bond was posted on the same date.

In a decision dated June 24, 1981, an immigration judge found the alien deportable pursuant to section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1982). The immigration judge denied his application for asylum and withholding of deportation, but granted him until August 1, 1981, in which to depart the United States voluntarily.

124

The alien appealed that decision to the Board of Immigration Appeals. On December 9, 1982, the Board dismissed his appeal but granted him a period of 30 days from the date of the decision in which to voluntarily depart the United States. The alien did not depart within the granted period. On January 13, 1983, demand was served on the obligor by certified mail, return receipt requested, to surrender the alien for deportation at the deportation section, Los Angeles District Office, on January 25, 1983, at 8:00 a.m. The return receipt evidences that the obligor received the demand on January 17, 1983. The obligor, however, did not deliver the alien to the Immigration and Naturalization Service at the specified place, on the specified time and date. Nor did the alien present himself at the place and time prescribed.

On appeal, the obligor offers three reasons that the bond should not be breached: 1) the alien placed himself under the jurisdiction of the United States district court on January 25, 1983, by filing a petition for a writ of habeas corpus; 2) the breach is based on narrow and technical grounds; 3) the alien's failure to surrender was a "non-substantial violation" of the conditions of the bond.

Upon consideration of the record, we find the first argument unpersuasive. We note that obligor's counsel in this matter was also the alien's counsel in the deportation proceedings and habeas corpus action. We further note that the obligor first engaged counsel in this matter on February 11, 1983, after the Notice—Immigration Bond Breached (Form I-323) was served on obligor. Counsel was, therefore, neither in privity with nor representing the obligor during the entire term of the deportation proceedings or the habeas corpus action.

Delivery bonds are formal instruments governed by the general provisions of 8 C.F.R. §§ 103.6 (a), (b), and (e) (1984). These instruments create a contract between the Service, the bonding agent and attorney-in-fact, and the surety company. There is, however, no contract between the Service and one who posts collateral with the bonding agent to secure the delivery bond, or between the Service and the named alien, or his attorney.

The delivery bond constitutes a contract between the United States Government and the obligor to produce and deliver a named alien upon each and every request by an officer of the Service. *United States v. Olson,* 47 F.2d 1070 (8th Cir. 1931). The conditions of a delivery bond are specific. They are violated if the obligor fails to cause the alien to be produced upon each and every request until deportation proceedings in the case are finally terminated, or until the alien is actually accepted by an immigration officer for detention or deportation. *Matter of Smith,* 16 I&N Dec. 146, 151

(R.C. 1977). The obligor's duty to deliver the named alien is not lessened because the alien, on advice of counsel, does not believe that he is required to appear. *See Matter of L–*, 3 I&N Dec. 862 (C.O. 1950).

The contract, on the face of the Immigration Bond (Form I–352) at paragraph C, provides for a sum as liquidated damages, and not as a penalty. *See Matta v. Tillinghast,* 33 F.2d 64 (1st Cir. 1929); *United States* v. *Glens Falls Indemnity Co.,* 152 F. Supp. 840 (S.D.N.Y. 1957). Liquidated damages are a well-known remedy. Congress has even required that liquidated damage clauses be inserted in certain situations, such as building contracts. Liquidated damage provisions are civil in nature, and, when reasonable, are not to be regarded as penalties. *Rex Trailer Company v. United States,* 350 U.S. 148 (1956) (citing in part *United States* v. *United Engineering and Contracting Co.,* 234 U.S. 236 (1914)).

The courts have sustained the concept of liquidated damages in the context of an immigration bond on several occasions. In part, these damages are viewed generally, as required to maintain an agency to enforce the immigration laws. They are also viewed specifically, in that the Government must investigate the whereabouts of a certain alien and is put to what the courts characterize as otherwise unnecessary trouble and expense. The courts have also taken cognizance of the confusion which would result if an alien could be surrendered at any time it suited the alien's, his attorney's, or his surety's convenience. *Earle v. United States,* 254 F.2d 384 (2d Cir.), *cert. denied,* 358 U.S. 822 (1958); *United States v. Glens Falls Indemnity Co., supra; Matter of Arbelaez-Naranjo,* 18 I&N Dec. 403 (R.C. 1983); *Matter of L–, supra; see also United States* v. *Goldberg,* 40 F.2d 406 (2d Cir. 1930).

The obligor is not relieved of its duty to deliver and surrender the alien merely because the alien's attorney sought relief through a petition for writ of habeas corpus on the date that the alien was to be surrendered, unless an order directed to the Service prior to the time of delivery relieves obligor of this duty. This fact is particularly true when the alien's counsel is neither in privity with, nor counsel for, the obligor, as is the case here, and when the alien's personal appearance in federal district court is not necessary to a petition for a writ of habeas corpus, and when it cannot be presumed that the writ which is sought will be issued in fact. We therefore find the obligor's failure to surrender the alien as required a violation of the conditions to which the obligor agreed upon posting of the immigration bond on the alien's behalf.

Obligor also raises issues that any finding of such violation is, or would be, based on narrow and technical grounds, and that the

alien's failure to surrender is a "non-substantial violation" of the conditions of the bond. For the reasons set forth below, we also find these reasons unpersuasive.

Immigration and Naturalization Service regulations provide that a bond is breached when there is a substantial violation of the stipulated conditions. *See* 8 C.F.R. § 103.6(e) (1984). The rule regarding strict performance of stipulated bond conditions is relaxed in delivery bond cases, however, where there is a substantial performance of benefit to the Government. *Matter of Nguyen,* 15 I&N Dec. 176 (R.C. 1975). The interpretation of "substantial performance" and "substantial violation" is, therefore, critical to the resolution of this matter.

Substantial performance exists where there is no willful violation of the terms or conditions of the bond, where the conditions are honestly and faithfully complied with, and where the only variance from their strict and literal performance consists of technical or unimportant occurrences. Substantial violations are those acts which constitute a willful departure from the terms or conditions of the bond, or the failure to comply or adhere to the essential elements of those terms or conditions. *Matter of Arbelaez-Naranjo, supra; Matter of Nguyen, supra.*

Determining whether a violation is "substantial" within the meaning of 8 C.F.R. § 103.6(e) (1984) requires consideration of the following factors:

(a) Extent of breach;

(b) Whether the violation was intentional or accidental on the part of the alien;

(c) Whether the actions which constitute the violation were committed in good faith; and

(d) Whether the alien took steps to make amends, or to put himself in compliance.

*International Fidelity Insurance Company* v. *Crosland,* 490 F. Supp. 446 (S.D.N.Y. 1980); *see also Mohomed* v. *Vician,* 490 F. Supp. 954 (S.D.N.Y. 1980); *Matter of Kubacki,* 18 I&N Dec. 43 (R.C. 1981).

The conditions imposed on the obligor were to deliver and surrender the alien at a particular place by a particular time on a particular day as previously specified. The alien was not delivered on that day, nor at any time subsequent to that day, until ordered to surrender by a United States magistrate of the Central District of California.

There is no evidence of record that the obligor would have delivered the alien, or that the alien would have surrendered, but for that court order. We therefore find that the extent of this breach is substantial on its face.

The facts of this matter also reveal an intentional violation of the conditions of the bond. There is no evidence of record that the obligor made any attempt to effect delivery and surrender of the alien. The obligor only appears to have become involved upon receiving the notice that the immigration bond was breached. This involvement, however, did not occur until after the alien surrendered himself on February 1, 1983, under court order of the United States magistrate.

The alien, on the other hand, filed a motion to reopen deportation proceedings with the Board of Immigration Appeals on Friday, January 21, 1983, based on his marriage to a United States citizen 2 days earlier. At no time prior to the day on which the obligor was required to deliver and surrender him, however, did the alien seek an administrative stay of deportation.

On Tuesday, January 25, 1983, the alien, through counsel, made a telephonic request to the Board of Immigration Appeals for an emergency stay of deportation pending decision on his motion to reopen. This request was denied on the same day. Not until January 27, 1983, 2 days after the obligor was required to deliver him, did the alien request an administrative stay of deportation from the district director at Los Angeles. Yet, it was this official who required his delivery and surrender.

The obligor's failure to show interest in the alien's case until after receiving the Notice—Immigration Bond Breached cannot be construed as an accidental violation of the conditions of the bond. Nor can the alien's seeking judicial remedies to stay his deportation on the day of his delivery and surrender be considered as evidence of an accidental violation. The failure to seek an administrative stay of deportation from either the district director or the Board of Immigration Appeals on the day he filed his motion to reopen or the 2 working days thereafter, prior to the day demanded for his delivery and surrender, is ample evidence that the conditions of the bond were not accidently violated.

As stated above, the alien placing himself under the jurisdiction of the United States district court at Los Angeles on the day demanded for his delivery and surrender does not establish substantial compliance with the conditions of the bond. Nor does the fact that the alien did not abscond or disappear show substantial compliance.

Delivery bonds are exacted to insure that aliens will be produced by the obligor for hearings or deportation when required by officers of the Immigration and Naturalization Service. Proceedings regarding administrative stays of deportation before a district director or

the Board of Immigration Appeals are set forth by regulation. *See* 8 C.F.R. §§ 243.4, 3.8(a) (1984), respectively.

The alien's conduct shows a disregard for these administrative procedures. Since the alien was represented by counsel, this disregard cannot be considered accidental. His placing himself under the jurisdiction of the United States district court at Los Angeles by filing a petition for a writ of habeas corpus was not an act of substantial compliance on the alien's part. It was a hastily conceived effort to avoid deportation after failing to even attempt to exhaust the prescribed administrative remedies which, if granted, would have stayed his deportation.

Such conduct also evidences a lack of good faith belief on the part of either the obligor or the alien that there was compliance with the conditions of the bond. There is also no evidence that the alien voluntarily took steps to put himself into compliance. His compliance was exacted only by court order.

Where there is a variance from the strict and literal performance of the conditions of a delivery bond, an obligor must establish substantial performance which is of benefit to the Government. The obligor has admitted that the alien was not delivered and surrendered as demanded. The obligor, however, has submitted no evidence to establish that any performance on this matter by either him or the alien is of benefit to the Government.

From our review of the record, we find that the obligor in this matter did not establish substantial performance. We are persuaded by the evidence of record that there has been a willful departure from the terms or conditions of the bond. We further find that the failure of the alien to be delivered by the obligor at the scheduled time and place is not a mere technical or unimportant occurrence because sometime during the day demanded for his delivery and surrender, he filed a petition for a writ of habeas corpus with a United States district court and did not abscond or disappear pending resolution of that matter.

After a careful review of the record, and in consideration of the foregoing, we conclude that the conditions of the bond have been substantially violated. Accordingly, the appeal will be dismissed.

ORDER: The appeal is dismissed.